CARROLL, CHAS., Chief Judge.
Appellants acquired a 99-year lease, dated March 13, 1946, by assignment from the original lessee. The lease covered a vacant lot comprising the southeast corner of the intersection of Lincoln Road and Washington Avenue, in Miami Beach. Owners and lessors were the late N. B. T. Roney, and his wife Gertrude C. Roney, the appellee.
The land subsequently was improved by a business building, known as 3S0 Lincoln Road Building. The lease fixed a minimum rental of $40,000 per year, and contained a provision for redetermination of the value of the parcel, as vacant land, at ten-year intervals, and for payment of rental for the ensuing ten years on the basis of 8% of the valuation as so determined. The manner of revaluation of the property at the end of ten-year periods of the lease was set out in a provision in Article IV of the lease as follows:

"Revaluation Clause:

“The annual rent to be paid to the Lessor after the tenth year of the term of this lease shall be subject to revision at the beginning of each ten (10) year' period (beginning with the eleventh year) based upon the appraised value of the above described land, provided such revision shall in no event reduce-the annual rent to an amount less than Forty Thousand ($40,000.00) Dollars,, in the manner following:
“If the Lessor shall desire a revision, of the rent, notice in writing thereof shall be given to the Lessee between, the first day of November and the first day of December of the year of the-term preceding the end of any ten (10). year term, which notice shall specify the name of the appraiser designated, by the Lessor to act as such; and within thirty (30) days after the receipt of such notice, the Lessee shall,, by notice in writing to the Lessor,, specify the name of the appraiser designated by the Lessee to act as such. If either of the parties hereto shall, fail to designate an appraiser within-, the time and in the manner herein provided, then such appraiser may be designated by the other party. The appraisers shall be instructed in writing-to examine the premises and to make a report in writing before April 1, next succeeding, to both the Lessor and the Lessee as to their opinion and appraisal of the fair market value of the fee simple title to the land hereby leased, irrespective of any improvements, thereon or of this lease, just as though, the said land were then vacant and unimproved, and taking into consideration its utility and value for use at that time as though it were a vacant parcel of ground with no buildings thereon *27 without regard to the cost of removing any such existing building. If the two (2) appraisers are unable to agree upon the fair market value of said land within thirty (30) days after they shall have received the written instructions hereinabove mentioned, the third appraiser shall be selected by the two (2) appraisers who shall have been named and the opinion of any two .(2) of the •said appraisers as to the fair market value of said land shall be conclusive upon the parties hereto. * * * All •of the appraisers to be designated hereunder shall be residents of Dade County, Florida, and shall be members of the Miami or Miami Beach Realtors Board or if such Realtors Boards be not then in existence of any similar association of realtors, or if there be no such association, then the appraisers shall be realtors holding brokers’ or salesmen’s licenses as such in Dade County, Florida. The report of the appraisers or a majority of them shall be executed and acknowledged in such a manner as to entitle the same to be recorded in the office of the Clerk of the Circuit Court, and the fair market value of such land, as fixed by the said appraisers, or any two of them, shall determine the annual rent to be thereafter paid to the Lessor for the next ten (10) year period of the term of this lease and thereafter until another value is fixed by the appraisers under the terms and provisions of this Article IV, which annual rent shall be an amount equal to eight (8%) percent of the fair market value so fixed in said report, but in no event shall the annual rent be less than Forty Thousand ($40,000.00) Dollars, and such rent shall be paid in the same manner as if the amount of animal rent so fixed was stipulated in Article III hereof.”
Pursuant to the foregoing provision of the lease, at the end of the first ten years, three appraisers determined the value as being $575,000, which operated to increase the rent $6,000 a year for the next ten years.
The lessees filed suit in the circuit court for a declaratory decree. They sought to have the court determine that the appraisals had not been made in accordance with the terms of the lease. The court rendered a decree adverse to this contention, holding that the methods of revaluation followed by the appraisers were in conformity to the provisions of the lease, and confirming the determination of the value for the second ten-year period as being $575,000, and the annual rental for such period to be $46,000 per year.
In a full and well written final decree, the chancellor stated the pertinent facts and the contentions of the parties, and the chancellor then analyzed the problem and arrived at a decision thereon which we hold is free from error. In lieu of restating those matters, we here quote from the decree as follows:
“The plaintiffs, Herbert Bernard and Stanley Glassman, copartners trading as G & O Properties, brought a suit against Gertrude C. Roney for a declaratory decree. Their bill alleges that the defendant, joined by her now deceased husband, on March 13, 1946 entered into a 99-year lease with the Lincoln Corporation, which, by successive instruments, has been assigned to the plaintiffs. The property involved is described as Lot 16 and the West Half of Lot 15, of Block 54, of Fisher’s First Subdivision of Alton Beach. The annual rental was $40,000.00 a year.
“The lease contained a paragraph, which, in substance, provided that if the lessor should desire a revision of the rent it could notify that lessee on a fixed day prior to the end of any ten year term, specifying the name of an appraiser, and within thirty days the lessee should designate an appraiser to act for it. The appraisers were to be *28 instructed to examine the premises and make a report in writing of the fair market value of the fee simple title to the land irrespective of any improvements and as though it were vacant. If the two appraisers ‘are unable to agree’ upon the fair market value of the property within thirty days, they shall select a third one and the opinion of any two as to the fair market value shall be conclusive upon the lessor and the lessee.
“The parties followed’the procedure outlined by the lease. The defendant-lessor appointed Van C. Kussrow who appraised the property at $600,000.00. The plaintiff-lessees appointed S. Z. Bennett who appraised the property at from $490,000.00 to $500,000.00. As there was manifest failure to agree, the two appraisers appointed W. Bates Cole who appraised the property at $575,000.00. The defendant’s appraiser, Van C. Kussrow, indicated a willingness to meet Mr. Cole’s appraisal and to agree to a valuation of $575,-000.00. The plaintiffs declined to accept such appraisal, and this litigation followed.
“The plaintiffs take the position that the appraisers did not render their appraisal of the fair market value of the land as though it were vacant and unimproved nor did they render their appraisal of the land as though it were a vacant parcel; hence they contend there was a failure to comply with the provisions of the lease. This contention cannot be sustained. The lease does not provide any method whereby the appraisals shall be made. It only provides for the appraisal of ‘the fair market value of the fee simple title to the land hereby leased irrespective of any improvements thereon or of this lease, just as though the said land were then vacant and unimproved, and taking into consideration its utility and value for use at that time as though it were a vacant parcel of ground with no buildings thereon without regard to the cost of removing any such existing building.’ Mr. Cole, the third appraiser, testified: ‘I arrived at the fair market value of the land through the residual method of valuation.’ He said he took into consideration leases on adjoining buildings or surrounding buildings, which included two adjoining stores. He further said that this method was commonly used in this area and that the residual method never takes into consideration the improvements that are on the property; that his valuation was irrespective of the present improvements. He testified: ‘As I recall, the lease says that we were to value the property without any consideration to the improvements thereon/
“Mr. Kussrow said that he acted along the same lines on which Mr. Cole acted. He took comparisons that had been made on land values almost opposite the subject property within half a block on which the federal government, for estate purposes, had put a certain value, on the opposite corner on which a loan was made, and on an appraisal directly to the west of the property. He took all of those things into consideration. He said that the property was entirely built up around there, that is, that there was no vacant property there at all. In response to a question in a situation where it is entirely built up how he could arrive at an appraised valuation, he said it was-impossible except on the land residual method, which is the standard method used by appraisers.
“In this connection, it might be explained that in applying the residual method of valuation, in the absence of sales of comparable property, the appraiser (1) erects on the property a hypothetical one story building and puts a value on it. He then (2) deducts the cost, expense and depreciation of this building and a fair return on it and (3) by subtraction of (2) *29 from (1), arrives at a 'residual’ in dollars and cents; (4) that residual is capitalized and the property valued accordingly.
“Mr, Bennett, after pointing out the objections to the residual method, said he eventually ended up with it. After adopting that method, he used his own judgment based on conversations with informed persons.
“Q. Do you agree that the application of the residual method is necessary in such cases? A. Only as a judgment figure; not as a figure to arrive at a conclusion.
“Q. Do you know of any other method whereby an evaluation could be reached? A. No, sir. Your Hon- or, appraising is an inexact science. It is more judgment than mathematics. There are only two methods — either comparable sales or applying a residual and using that to go with your judgment.’
“The error, in my opinion, into which the plaintiffs have fallen is their assumption that the lease provides the ‘method to be followed by appraisers’ in determining on revaluation the fair market value of the leased land. It does not. It is quite true that it provides that the fair market value shall be determined ‘irrespective of any improvements thereon’ or ‘of this lease’ and ‘just as though the said land were then vacant and unimproved.’ But it leaves the method entirely up to the appraisers. As Mr. Bennett pointed out, appraising is an inexact science.
“It is quite obvious that the paragraph of the lease under consideration was put there for a purpose. The parties to this agreement contemplated that Miami Beach would grow and develop and the property would become more valuable as time passed. The lessor sought to protect herself by providing that every ten' years the bare land would be revalued. To adopt the plaintiffs’ view would be to nullify completely this provision of the lease. Conceivably in 99 years this property may become worth millions of dollars. Shall we deviate from that which is, at most, a procedural matter to save a vital part of the lease, or shall we sacrifice a vital part of the lease to save a procedural matter? Is the object and purpose of the lessor that her property be revalued every ten years to be thwarted just because adjoining property has been completely built up and there is no vacant property left-in the neighborhood which would afford a basis for comparison of value? I think not.
“It is the view of this Court that the provisions of the lease respecting revaluation each ten years are valid, binding and enforceable and should not be frittered away by strained construction.
“As far as the argument that the action of Mr. Kussrow in indicating his willingness to ‘meet’ the figure arrived at by Mr. Cole is concerned, suffice it to say that I think the lease contemplates that the appraisers shall do just this. It provides: ‘If the two appraisers are unable to agree upon the fair market value of the land within thirty days * * This seems to contemplate that there shall be some exchange of ideas between them and they shall endeavor to reach an agreement as to the value that is mutually satisfactory. In any event, this is a most common procedure not only among appraisers and arbitrators but notoriously among jurors, legislators, members of city, county, state and federal boards, and even judges — yes, even judges. They frequently ‘concur in the conclusion’ when they have no sympathy with the reasoning at all. Therefore,
“It is Ordered, Adjudged, Declared and Decreed:
*30 “1. That the methods of revaluation followed by the ■ appraisers, W. Bates Cole and Van C. Kussrow, were in conformity with the provisions of the lease made on March 13, 1946 between Gertrude C. Roney, joined by her then husband, N. B. T. Roney and the Lincoln Corporation.
“2. That the value of the property for the ten year period from April 1, 1956 to March 31, 1966 is fixed at $575,000.00 and the annual rental payable for the use and occupancy of the premises covered by the lease for that period shall be eight per cent of such sum or $46,000.00.”
The questions which were raised in the trial court have been re-argued here. It is the opinion of this court that the chancellor arrived at the correct decision of those questions, and we see no need to add to his statement thereof or his reasoning thereon.
Affirmed.
HORTON and PEARSON, JJ., concur.